Thank you, Your Honors. Kristen Thayer for Appellant Dwayne Martin. I'd like to reserve three minutes for rebuttal and I will watch the clock. When six officers surrounded Martin's home with their guns drawn, pointed in the window, and demanded, open the door, they exceeded the scope of the customary license to knock, wait to be received, and then without an invitation to linger longer, to leave. The district court therefore erred in denying suppression of the gun later found as a result of this illegal knock and talk. Alternatively, at the least, this court should remand for the correct findings to be made for the forced medication condition of supervised release. So turning first to the knock and talk issue, the occupants of that apartment were obligated to open the door and follow the commands of the officers. And that is a core violation of the knock and talk rule, which is that officers can only seek voluntary and consensual interaction with the occupants of a home. On top of that, their guns were drawn, not just holstered, they weren't just armed police, they were in fact deploying their weapons. And one officer was even pointing it in the window while yelling, open the door. It exceeds any formulation of the rule, whether it's the government's preferred formulation or Martin's faithful reading of London. Is it fair to say that that wasn't really the focus of the defense argument before the trial court? That the focus was more on the purpose of the officers approaching the door? And if that's a fair statement, then should the court reach the issue that you're raising about the extent of the approach in the appeal? Yes, so I think two answers to that question, Your Honor. I do think that the dispute circled more on the subjective intent of the officers, whether it was to arrest or not, because that of course isn't captured in a body cam like the objective conduct was. But the issue was fully litigated below. I would direct the court to the record at pages 150 to 151. That is the supplemental briefing post-hearing by the defense. It has the totality of the circumstances analysis, starting from officers approaching. It's the subsection on knock and talk that Mr. Martin raised. It has the officers approaching, guns drawn, the amount of officers. It described the totality and said on top of that, their subjective intent appears to be to arrest him because they in fact did immediately arrest him when they placed eyes on him. All of that violates the knock and talk rule set forth very clearly in London. So I don't think it's fair for the government to argue that this wasn't preserved while maybe the focus was on the disputed fact of what was inside the officer's head. That does not mean that the issue wasn't litigated below and preserved and is fairly before this because it's caught on body cam, the objective factors. And that brings me to an important point on the knock and talk. The government attempts to turn the entire analysis into just the subjective intent of the officers, but that's not what London says. London says that can be one of the ways they can exceed the bound as if they show up with the intent to arrest. But it also says the government must prove that the officers, quote, conformed to the habits of the country by doing no more than any private citizen might do. And they say that so the police must approach the home by the front path, knock promptly, wait briefly to be received, and then absent invitation to linger longer leave. And all of that is in London. It is a straightforward decision that sets forth the rule. It's not dicta. And the district court did err by not considering the totality and focusing only on the subjective intent dispute. I would like to also address just quickly that the intent dispute that the parties did have, though, because the record doesn't actually support that their the government seems to, it seems to not be in dispute that there was at least a conditional intent to arrest that if he was there, they would arrest him. Well, that's, that's true in every scenario, you can't arrest someone who isn't in the place where you're going. So I think that was lost in in the district court briefings that because part of their intent was to arrest that that does violate London. But again, this court must consider the totality and even just the objective conduct of the officers well exceeded what the customary license allows, which is just a consensual, calm, knock and talk without commands. Council, did the district court address the knock and talk issue? Both the magistrate judge in the report and recommendation and the district court. And the district court judge. So how can it not be preserved if it were addressed by both the magistrate judge and the district court judge? How? How is it not preserved? I agree with your honor that it is absolutely preserved. There was a merits ruling by both the magistrate judge who conducted an evidentiary hearing. In the report recommendation, there was a district court decision on the objections. We of course, challenge that that decision got the law wrong and didn't appropriately apply the totality of the circumstances of London says and actually apply all of its rules and focus just on the subjective intent. But there's a merits ruling. Everything is preserved for this court. There's no new theory. There's no new ground. It was all raised below the district court's border. Just was erroneous, unfortunately. And that is why Martin has presented the issue to this court. And quickly, I would like to also state that if this court does not remand or suppression, the court should have the least send the case back for the medically grounded findings that need to be made before the court can impose the forced medication condition. And I see that I'm at three minutes. So if there are no further questions, I can save my time for a little. Okay, you've got May it please the court. Peter walking show on behalf of the United States. The touchstone of the Fourth Amendment is reasonableness, and the officers in this case were eminently reasonable in their investigation in responding to a report of domestic violence in which the defense let me stop you a moment. I know you're going here because I did read your brief and you talk about the reasonableness of the knock and talk. But when you read the knock and talk is this consensual? Walk up to a door, knock on the door. The person would open the door. So the reasonableness that you're referring to is far is the dangerousness of the situation that there might be an armed person inside. I understand why you're making that argument. But in the context of a knock and talk, which is supposed to be a consensual interaction to me that the two don't fit together, and I don't see how to make those two fit your honor. As we discussed in our briefs, the additional complaints that defendant raises here for the first time in the Court of Appeals shouldn't be considered by this court in terms of the legality of the knock and talk. Had they been raised Council, what specifically shouldn't be considered? Your Honor, the way that the courts below understood the defendant's regarding his objection to the knock and talk and the way that the defendant himself framed his argument in his objection to the magistrate's report and recommendation to E. R. 9192 was that the problem with the knock and talk was that the officers subjectively intended to arrest the defendant inside the home and the improper purpose. Yes, and that was the reason. The reason why, uh, as the defendant suggestion is briefing before this court that the these other circumstances weren't considered or weren't briefed by the government is because they simply weren't raised below. They weren't isn't an improper purpose and also if you're not supposed to go up to somebody's door to with the intent to arrest him to go up there with on a consensual knock and talk with your guns drawn and order people out of the residence. I mean, well, your honor, I think I'd draw a distinction commands the commands to come out of the residence. That doesn't sound like a knock and talk to me, your honor. I think I'd draw a distinction between the manner in which the knock and talk was conducted and the purpose for which the officers decided to approach the home. Now, had the officer had the objections to the manner of the approach been raised below, um, you know, the government could have raised arguments like the exigencies of the circumstances which compelled the officers to take precautions for their safety, which we briefed. We certainly could have raised the question of whether or not the manner of the approach affected the way in which, uh, Miss Cormick ultimately had her officers. She did have a discussion with them regarding the presence of the defendant within the home. And most of that, the her consent to enter the home happened after the situation has deescalated. So we certainly could counsel consent given at the end of a gun. I mean, when there's a gun drawn and you ask for somebody to when there are weapons displayed and you ask for consent to enter the home, is that really consent? Your honor, it's certainly the presence of weapons and whether or not they're drawn is certainly a factor for the court to consider, but it's not dispositive. It's one of several non-exhaustive factors of this court. That show of force, the number of officers, the, this was an elderly woman, you know, element of surprise. All of those, to me, militate toward a finding of lack of consent. And it was not a prolonged, it was a really, um, summary discussion. It wasn't, she was not told that she had the opportunity to, uh, deny consent. And after all of the force that had been displayed, why would she reasonably think that she had the ability to decline consent? Well, your honor, by the time that the officers did ask for consent, it was a single officer at the threshold of the door. By the time he did ask for another right behind him, I looked at the body cam video. There was one, the officer who asked for consent, there was another officer right behind them. Both of them still had their guns. They were lured, but they still had the guns. And they had ordered her to go into the homing and get her nephew or son, whichever it was, to come out. I believe, your honor, that, uh, Ms. Cormack had asked if she could go and get, uh, Mr. Martin. And the officer said, yes, please. I believe was the, was the way it was phrased. By the time that request was, by the time consent was requested, Ms. Cormack had returned inside the home, had turned her back to the officers. The way the officer asked was, hey ma'am, can we come in? At which point she had to look over her shoulder and wave them in. So I believe that while, there's certainly no dispute that the interaction was initially very tense on both sides. The officers, as we discussed, are briefed. Not on both sides, no. It wasn't tense on the, she came out like this. She didn't come out confrontational. She didn't come out in any way aggressively. She came out with her, like, what's going on? She didn't, there was not tense on both sides. Oh, I certainly agree with that, your honor. I suppose what I mean to say is that I think there was reasonable fear on both sides. Well, I don't know about that either. You know, I'd like to point out too that as far as, you know, when these statements were made about when she gave consent, you know, there were also a lot of conflicting orders that were given by the officers. Come in, you know, go back, don't go back in your house, come in, go get him. You know, no, you can't go get him. So, I mean, there's a little bit of confusion that's going on there as well. But another thing I want to ask you about is, if I recall correctly, the district court didn't address the issue of consent, didn't analyze whether or not it was voluntary. The magistrate judge did, but the district court said, I don't need to go there. They got the information they needed with the knock and talk, confirming that Mr. Martin was in that apartment, and didn't even analyze the issue of whether or not there was consent. If we don't find that the knock and talk was appropriate, then what do we do about the lack of finding by the district court? When we have the exact same evidence that was presented, and it's not judging anybody's credibility, it's watching body cam. How does the, how do we address the issue of consent in those circumstances? Your Honor, I do believe that the court's review of the district court's findings are subject to clear air review, just like all factual findings. And in its order, the district court said that the Judge Fehrenbach's, Judge Mahan said the Judge Fehrenbach's report and recommendation was adopted. So, he certainly responded to the arguments that were presented in the objections to the R&R. But there's nothing to suggest that it was adopted as modified, or that it was otherwise changed in any way. Like, it's very common for district judges to adopt portions of a magistrate's R&R that they approve of, and make clear that the ones that they don't approve of. Here, the magistrate judge cited the totality for evaluating the voluntariness of the consent, but didn't address any of the factors that Judge Rawlinson just mentioned. Well, Your Honor, I mean, I believe that in the magistrate's order, it does address the fact that the officers did have their guns drawn. And I think that's essentially the main argument, is the presence of multiple officers and the guns drawn are the two that, no, that I think the defense is primarily relying upon. I mean, I think those are blatant. Those are the factors that we need to evaluate in determining whether or not consent was given, and whether or not any decision that consent was given was erroneous. So, if the courts did not grapple with those factors, then we can look at those de novo. Well, I certainly agree that this court should consider whether or not the officers had their guns drawn. I think there's no dispute about that. I also think that it's plain from the record that both the magistrate and the district court judge were both aware that the firearms were drawn, and that it's clear that they watched the video. So, what about the other factors that we've said should be considered? It's not clear from the record that those were considered at all, and the body cam video does not evidence that she was informed that she could deny consent, and that's a very important factor. Well, Your Honor, I think that in some respects, I think the manner that the question was asked, I think gives rise to a plausible inference that it was clear that she could say no. It was not clear. That was not clear that she could say no on that. I mean, perhaps an inference could be drawn, but it's not a clear inference that she could say no. Somebody approaches your door with their guns drawn, and you think you can say no to them coming in? Again, Your Honor, I see I'm reaching the end of my time. I think all of these factors, I think, um, really were considered by the... Counsel, in terms of your time, take the time to answer Judge Rawlinson completely. Thank you, Your Honor. So, Your Honor, again, I do believe a fair reading of the magistrate in the district court's order. The magistrate's order, with respect to voluntariness, does indicate that he watched the video, that he took into consideration the relevant factors, and that he came to the correct conclusion, and certainly not a clearly erroneous one. I am at my time. I'd be happy to answer further if the court, if it would be helpful to the court. Thank you, Counsel. I have no questions. Judge Rawlinson, Judge Sips. No, thank you. No questions. Thank you. So, we'll return to the appellant. Thank you, Your Honor. Two quick points for rebuttal. First, the knock and talk issue is fully preserved. As stated in the opening, at the page, record at pages 150 to 151, the totality was analyzed, and even the pages of the government sites, which were the objections, at 91, 92, 93, Martin explains at least five uniformed officers surrounded the unit with their guns drawn. They did not merely intend knock and wait to be received. They pounced on the door and gave commands to open the door. So, this issue was fully briefed, preserved, and erroneously decided below. My second point is on consent, and I think that this case is unique because the body cams capture so many different angles of the interaction. So, this court, while the lower courts did not analyze the factors that must be considered, I do think that this court can review the undisputed evidence of the body cam and see that the factors are not met here, and that the government did not meet its heavy burden to prove voluntary and knowing and and it wasn't met here for the reasons that the court has pointed out and that are in the briefing. So, unless the court has any questions. I have a question for you. So, if we determine, um, contrary to Appellee's argument, if we determine that the knock and talk was not a valid knock and talk, wasn't consensual, on the issue of whether there was consent, are you saying we should remand it or that we should decide it ourselves? No, Your Honor. So, if this court rules in Martin's favor on the knock and talk, that ends the inquiry because under that violation, the gun would be suppressed and there would be no further issues to reach. The knock and talk is the first violation in time, so it makes sense for the court to decide that issue first, and then, of course, the remaining issues. So, in other words, we wouldn't have to reach the consent issue if we determined that the knock and talk was not done in accordance with the law? Absolutely, Your Honor. Yes. So, the knock and talk would end the entire Fourth Amendment inquiry because the violation would result in the suppression of all evidence in this case. Well, couldn't the government obtain the information that it needed to procure the search warrant, even if the knock and talk were illegal, if there was further consent in some manner? Isn't that just another exception that – if the consent was voluntary? No, Your Honor, because it was undisputed and there was a specific finding below that the only nexus – the only way the officers determined the nexus between Martin and this apartment to obtain the search warrant was through the knock and talk. And that is – I can provide the court that finding. It is at ER 9. The district court made that finding, and that was a correct finding, not challenged by anyone below. So, that nexus wouldn't exist for the search warrant. But then the district court didn't go on to really address consent because of that finding. The – once the district court determined that the knock and talk was okay, the district court didn't need to address the consent issue. Right. So, that's why I think that opinion was structured with the nexus in that manner. I think we would still need to address consent because even if the first actions were illegal and the occupant said, okay, listen, I didn't like the way you came up there, but I'm fine with you all coming in the house, I think we would have to address that, wouldn't we? No, Your Honor, respectfully, because as stated at the opening brief or addressed more fully in the opening brief at pages 34, 35, that's the consent issue. It's also addressed in the knock and talk issue. The indirect products of a violation must also be suppressed. So, going back to sort of just the fruits analysis, it's not sort of this but-for causation that the government argues for, of course, it's broader. Anything tainted by the original – by any violation must be suppressed and everything the officers did was tainted by that knock and talk because they violated his rights to obtain the information that he's in the home, to go into the home, to arrest him, to obtain the search warrant, and to retrieve the gun. So, everything – because it conduct, it's – this is a traditional fruits analysis where retrieving the gun was tainted by that illegal knock and talk. Counsel? On page 9, line 14 through 16, the district court said, finally, the court finds that Cormac's consent to enter the apartment resulted only in defense arrest. It did not produce any evidence that must be suppressed or stricken from the warrant. Instead, only the knock and talk resulted in the admission that defendant lived there. What do you – how – what was your interpretation of what the court was saying there? I believe – so, at ER page 9, I think the court was acknowledging that – I'm just asking you, what is those three lines? What was the court saying in those three lines? I think that the court was saying that the reason the knock and talk matters is because that's how the officers established Martin was in the apartment, that he lived there, that he had a room there, and that's how they obtained the search warrant. So, that's what the court was – the only way that they were able to actually establish – they might have thought Martin had a gun somewhere, and they might have thought he lived somewhere, but they didn't have the connection between the two until they conducted that illegal knock and talk and demanded the information from Ms. Cormac when she opened the door. So, that's why that issue does end the inquiry under just a traditional fruits analysis, but I do understand if the court – I do think this court can review the consent issue as well, because the body can issue demonstrates there was not valid consent here. Thank you, your honors. I appreciate the question. Thank you, counsel. So, that's one of my colleagues. Today, as a question, we'll now submit this case, and the parties will hear from us in due course. And I want to thank both the advocates for splendid advocacy of their clients' views, and we really need that help. And they both did a nice job assisting the court. Thank you.
judges: GOULD, RAWLINSON, Zipps